AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.   3:25-mj-00104 |
| Juan Diego HERNANDEZ-GARFIA | ) |
| | ) |
| | ) |
| _Defendant(s)_ | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 2023_____ in the county of _____Montgomery_____ in the
_____Southern_____ District of _____Ohio_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 and 841(b)(1)(A) | conspiracy to possess with intent to distribute and to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance |
| 21 U.S.C. s. 844(a) | knowing possession of a controlled substance |

This criminal complaint is based on these facts:

See Attached Affidavit of Jessica Suddeth

☑ Continued on the attached sheet.

_Jessica Suddeth_
_____
_Complainant's signature_

Jessica Suddeth, SA of DEA
_____
_Printed name and title_

Sworn to by reliable electronic means -- namely, telephone.

Date:   _2/27/25_

_____
Peter B. Silvain, Jr.
United States Magistrate Judge

City and state:   _____Dayton, Ohio_____

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Jessica Suddeth, hereby duly sworn, declare and state:

## INTRODUCTION

1.      I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA").  I therefore am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 21 U.S.C. § 878.  Moreover, I am an "investigative law enforcement officer" within the meaning of 18 U.S.C. § 2510.

2.      I have been employed as a Special Agent by the United States Department of Justice, DEA, since June 2022, and I am currently assigned to the DEA Dayton Resident Office (DRO).  In July 2022, I reported to DEA Basic Agent Training in Quantico, Virginia.  In November 2022, I completed the 17-week Basic Agent Training Academy at the DEA Justice Training Center in Quantico, Virginia.  While attending Basic Agent Training, I received instruction on topics including narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, current trends/patterns involving the distribution of narcotics, as well as other areas of drug enforcement. Prior to my employment with the DEA, I served as a Probation Officer in various counties in Ohio as well as the United States Probation Department, working for from February 2012 to October 2021.

3.      During my career with the DEA, I have participated in controlled substances investigations, involving cocaine, methamphetamine, and fentanyl.  I have conducted physical surveillance; and monitored/reviewed recorded conversations of drug traffickers.  I have participated in Title III investigations by monitoring lines, supervising monitors, and conducting surveillance to substantiate the Title III interceptions.  During the course of these interceptions, I

have become familiar with coded terminology utilized by drug trafficking organizations to disguise their illegal activities and the manner in which they conduct these illegal activities. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks including the use of communication facilities such as the United States Post Office and FedEx to ship both narcotics and United States Currency associated with the narcotics trafficking activities. I have interviewed witnesses, subjects, and defendants involved in and/or arrested for drug violations, and have participated in several joint interagency federal and state investigations.

## PURPOSE OF AFFIDAVIT

4.       I make this affidavit in support of a criminal complaint and arrest warrant for Juan Diego HERNANDEZ-GARFIA for violations of: (a) Title 21, United States Code, Section 846 and 841(b)(1)(A) (conspiracy to possess with intent to distribute and to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl); and (b) Title 21, United States Code, Section 844(a) (possession of cocaine).

5.       I have not included every detail of the investigation, but only information necessary to establish probable cause for the requested complaint and arrest warrant.

## SUMMARY OF PROBABLE CAUSE

**A.     Introduction**

6.     The United States, including the DEA, is conducting a criminal investigation of a Drug Trafficking Organization ("DTO") comprised of, among others, Juan Diego HERNANDEZ-GARFIA.

**B.     In August 2023, an undercover officer purchased fentanyl from Individual A, who in turn had procured the fentanyl from HERNANDEZ-GARFIA.**

7.     During 2023, DEA in St. Louis, Missouri, was investigating a person identified herein as Individual A for drug trafficking activity.  As part of that investigation, DEA obtained a court-authorized wiretap that permitted interception of certain communications over Individual A's cell phone.

8.     On August 14, 2023, a DEA investigator acting in an undercover capacity ("the UC") arranged to purchase one kilogram of fentanyl from Individual A. Individual A informed the UC that he (Individual A) had to go to Ohio to obtain the fentanyl. That same day, DEA investigators used electronic and physical surveillance to follow Individual A as he traveled to Ohio. When Individual A arrived in Ohio, agents lawfully intercepted a phone call between Individual A and a person identified herein as Individual B.  During this intercepted call, Individual B directed Individual A to a home near Dayton, Ohio, and further instructed Individual A to meet a "guy" in a red sweater.  Based on my training and experience, I believe that, during this call, Individual A was directed to meet with a courier (later identified as Juan Diego HERNANDEZ-GARFIA) who would supply a kilogram of fentanyl to Individual A.

9.      After the intercepted conversation, DEA observed Individual A travel to this home near Dayton, Ohio.  At that location, Individual A met with an Hispanic male wearing a red

sweater, who was positively identified as HERNANDEZ-GARFIA; notably, HERNANDEZ-GARFIA matched the description of the deliveryman that had been given to Individual A during the intercepted call.  Agents saw HERNANDEZ-GARFIA walk out the front door of the home, meet with Individual A, and hand Individual A an object.  Based on my training and experience, as well as my knowledge of the investigation to date, I believe that this activity was consistent with a hand-to-hand drug transaction (i.e., the transfer of a kilogram of fentanyl from HERNANDEZ-GARFIA to Individual A).  Moreover, I believe that HERNANDEZ-GARFIA knew that he was delivering fentanyl to Individual A.  Specifically, Individual A and Individual B would not have trusted an unwitting accomplice to handle that quantity of fentanyl given its street value, which was in the thousands of dollars.  Given the value of these controlled substances, HERNANDEZ-GARFIA necessarily would be a witting and trusted participate in this drug operation.

10.     Following the transaction, Individual A immediately left the house and was surveilled as Individual A traveled back to his residence in the St. Louis area.  At approximately 6:30 p.m. on August 14, 2023, after Individual A had returned from his trip to Ohio, DEA conducted a controlled purchase operation using the UC. During the operation, the UC successfully purchased one kilogram of fentanyl from Individual A in the St. Louis Metro area.  Lab results confirm that substance was, in fact, fentanyl.

11.     Based on this sequence of events, I believe that Individual A travelled to southern Ohio to obtain a kilogram of fentanyl.  Using his phone, Individual A arranged to obtain this fentanyl from a courier – namely, HERNANDEZ-GARFIA.  Individual A then met with HERNANDEZ-GARFIA in Ohio, obtained the kilogram of fentanyl from HERNANDEZ-GARFIA. and then returned to Missouri, where Individual A resold these drugs to the UC.

**C.      During February 2025, law enforcement encountered HERANDEZ-GARFIA in possession of cocaine.**

12.     On February 27, 2025, DEA intended to execute a search warrant at a home in the Dayton, Ohio area.  As agents prepared to do so, they observed HERNANDEZ-GARFIA exit this home, enter the driver's seat of a Dodge truck, and drive away.  (Through this investigation, law enforcement learned that HERNANDEZ-GARFIA was a citizen of Mexico who had overstayed a work visa and therefore was illegally in the United States; additionally, law enforcement learned that HERNANDEZ-GARFIA did not have a valid driver license).  As HERNANDEZ-GARFIA drove from the residence, Ohio State Highway Patrol stopped the vehicle for, among other things, a traffic violation.  During the ensuing stop, OSP confirmed HERNANDEZ-GARFIA was the driver of the vehicle.  OSP placed HERNANDEZ-GARFIA under arrest and, while searching him, discovered in his pocket a substance that field tested positive for the presence of cocaine.

## CONCLUSION

Based on the facts set forth in the Affidavit, I respectfully request an arrest warrant and criminal complaint for Juan Diego HERNANDEZ-GARFIA.

*Jessica Suddeth*
Jessica Suddeth
Special Agent
Drug Enforcement Administration

Sworn and subscribed before me on this
 27th  day of February 2025.

Peter B. Silvain, Jr.
United States Magistrate Judge